## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CITY OF DETROIT,

      Plaintiff,

v.                                   Case No. 03-CV-74279-DT

TXU ENERGY RETAIL COMPANY L.P. f/k/a
TXU ENERGY SERVICES and SEMINOLE
ENERGY SERVICES,

      Defendants.

                                   /

### ORDER DENYING PLAINTIFF'S "MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(A) & (E)"

Pending before the court is Plaintiff City of Detroit's "Motion for New Trial or to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(a) and (e)." Having reviewed the motion, the court concludes that a hearing is unnecessary. E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the court will deny Plaintiff's motion.

### I. STANDARDS

#### A. Federal Rule of Civil Procedure 59(a)

Federal Rule of Civil Procedure 59(a) provides that:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Fed. R. Civ. P. 59(a).  The Supreme Court has noted that "the authority of trial judges to grant new trials" pursuant to Rule 59(a) "is large."  *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996); *see also id.* ("'The trial judge in the federal system,' we have reaffirmed, 'has . . . discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.'" (quoting *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958))).

### B.  Federal Rule of Civil Procedure 59(e)

"The standard for granting a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) is high."  *Manning v. Crane*, No. 03-21817502, 2003 WL 21817502 (E.D. Mich. July 18, 2003).  Specifically, a motion to alter or amend judgment should be granted only "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice."  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).   "Rule 59(e) motions are not to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law."  *Indep. Petroleum Ass'n of Am. v. Babbitt*, 178 F.R.D. 323, 324 (D.D.C. 1998) (citation omitted).  Additionally, a party wishing to alter or amend a judgment may not "raise arguments which could and should have been made before judgment issued."  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).  "Rather than filing a Rule 59(e) motion, the proper action for a party seeking redress on issues previously litigated is to appeal."  *Keenan v. Bagley*, 262 F. Supp. 2d 826, 830 (N.D. Ohio 2003).

### II.  DISCUSSION

2

In the court's September 21, 2005 "Findings of Fact and Conclusions of Law Pursuant to Fed. R. Civ. P. 52 on Defendants' Claim for Reformation of Contract," the court concluded that "[a]t all times pertinent . . ., the City intended that the 'Delivery Point' under the Contract be the MichCon Citygate." (9/21/05 Order at 15, ¶ 2.) The court also concluded that the City breached the Contract, as reformed, by improperly withholding payment in the amount of $6,994,343.85, as of March 31, 2005, from Seminole's gas invoices and that Seminole is entitled to interest as set forth in the Payment Ordinance on the withheld payment in the amount of $633,294.53, as of March 31, 2005. (*Id.* at 16, ¶¶ 8-9.)

In its "Motion for a New Trial or to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(a) & (e)," Plaintiff argues that the court "overlooked the facts in support of . . . Plaintiff's proof of the City's intent in entering the Contract at issue" and "erred in awarding Defendant Seminole added interest under the City of Detroit Prompt Payment Ordinance." (Pl.'s Mot. at 1.)

## A.  The Court's Conclusion that the City "Intended" the Contract Delivery Point to be the MichCon Citygate

Plaintiff argues that the court's conclusion was incorrect because "only the City Council could bind the City to the Contract" and "there was no evidence that the City Council made any mistake in reading the disputed Contract in any way other tha[n] its literal provisions and there is no evidence that Council ever understood 'delivery point' to be the Citygate, when the Contract said 'facility meter.'" (Pl.'s Mot. at 2-3.) In support of this argument, Plaintiff further asserts that the court correctly noted in its Finding of Fact Number 48 that "none of the reports or recommendations ever provided

to the City Council regarding the Contract mentioned that TXU would be liable for

MichCon transportation charges" but that "[t]he same observation could be made that

none of the reports by various departments referred to a many important provisions of

the Contract."  (*Id.* at 2.)

As the court noted in its September 21, 2005 order, it is well-established that

under Michigan law:

> A written instrument may be reformed where it fails to express the intentions
> of the parties thereto as the result of accident, inadvertence, mistake, fraud,
> or inequitable conduct, or both fraud and mistake, fraud or inequitable
> conduct being on one side and mistake on the other.  Conversely, in the
> absence of satisfactory proof of accident, fraud, or mistake, there is no basis
> for a court of equity to reform an instrument.

*Najor v. Wayne Nat'l Life Ins. Co.*, 178 N.W.2d 504, 511 (Mich. Ct. App. 1970) (citing 45

Am. Jur., Reformation of Instruments, § 45.)  "Evidence of fraud or mistake is seldom

found in the instrument itself, from which it follows that unless parol evidence may be

admitted for that purpose, the aggrieved party would have as little hope of redress in a

court of equity as in a court of law."  *Goldberg v. Cities Service Oil Co.*, 266 N.W. 321,

325 (Mich. 1936).

The court reviewed a multitude of evidence in making its "Findings of Fact and

Conclusions of Law," and Finding of Fact Number 48 was one out of sixty-four findings

that the court made in its order.  The court cited numerous trial exhibits and trial

testimony that it relied on in making its conclusions of law relating to the City's intent.

Essentially, Plaintiff is attempting to relitigate the matters that the court decided in its

September 21, 2005 "Findings of Fact and Conclusions of Law."  "Rule 59(e) motions

4

are not to be used to relitigate matters already argued and disposed of . . . ."  *Indep.*

*Petroleum Ass'n of Am.*, 178 F.R.D. at 324.

As an additional matter, Plaintiff's argument that the court reviewed evidence not

specifically targeted at the City Council's intent is equally baseless.  The court reviewed

evidence relating to past gas contracts that the City Council approved, the City

Council's approval of budgets allocating the expenditure of money for both the Contract

and the MichCon contracts, among many other pieces of evidence cited within the

court's "Findings of Fact and Conclusions of Law."  Many courts have held that courts

can consider parol evidence in making a finding relating to the intent of municipal

entities charged with the responsibility to approve Contracts.[1]

Plaintiff also cites *Armory Commission v. Palmer*, 69 S.W.2d 681 (Ky. Ct. App.

1934) as support for its assertion that a "statutorily designated approving body . . . can

---

[1] *County of Wexford v. City of Cadillac*, 1999 WL 33439157, at *2 (Mich. Ct. App. July 2, 1999) ("To ascertain the parties' intent, the trial court found it necessary to consider the 'entire history and the purpose of the project' which consisted of items already admitted into evidence, including the 1975 Facilities Plan and the parties' 1975 and 1977 agreements.  The trial court properly construed the Contract against its drafter, in this case, plaintiff."); *see also Regional Disposal Co. v. County of King,* 1997 WL 583729 (Wash. App. Div. 1 September 22, 1997) (the court considered statements and testimony of multiple county employees, noting that "a county agent wrote to Waste Management and said, "In quoting this Contract section, your letter omits the key phrase 'open to the public'. . . .  The omission of this phrase clearly would change the requirements of the Contract."  The County's position was clear that Waste Management's proposed intermodal facility did not satisfy the Contract requirement of a receiving facility open to the public.  The County's seemingly unilateral change in interpretation happened over two years after the CDL Contract was negotiated and executed.  Other County employees, including the chief CDL Contract negotiator, had no doubts that it was clear to both vendors that the County was requiring two transfer stations.").

5

only be bound to the written document they approve." (Pl.'s Mot. at 3.) Plaintiff quotes

the following language from *Armory Commission*:

> This was not an approval of anything that had occurred between the
> adjutant general and the Palmers without the knowledge of the board.
> Only the board could make a Contract for the state. There was no
> misunderstanding between the Palmers and the board. The state is only
> bound by the action of the board. The state is not liable to the Palmers for
> any negligence of the adjutant general, and the Contract cannot be
> reformed for any mistake he made, which the board knew nothing of.

*Armory Commission*, 69 S.W.2d at 682-83. Besides the fact that the *Armory*

*Commission* decision is not based on Michigan law, it does not stand for the proposition

that the final Contract approved by the Detroit City Council is the only evidence that the

court can use to determine the Council's intent. Moreover, the *Amory* board members

testified at trial that the lease was drafted and approved according to the terms they had

intended and that the agent who dealt with the plaintiffs lacked the authority to amend

the terms of the lease without their consent. The *Armory Commission* court opinion is

not persuasive.

Plaintiff has not made a showing that a new trial is warranted under Fed. R. Civ.

P. 59(a), nor that there has been "a clear error of law, newly discovered evidence, an

intervening change in controlling law, or . . . manifest injustice" relating to the court's

conclusion that the City intended that the Contract delivery point be the MichCon

Citygate. *GenCorp, Inc.*, 178 F.3d at 834. Plaintiff's evidentiary challenges essentially

attack the credibility of the evidence that the court reviewed in its determinations of fact,

which are entirely within the province of the factfinder. Accordingly, the court rejects

Plaintiff's invitation to amend its conclusion that the Contract must be reformed.

**B.  The Court's Determination of the Contract Price**

6

2:03-cv-74279-RHC   Doc # 128   Filed 12/23/05   Pg 7 of 10   Pg ID 6143

Plaintiff argues that the court's reformation of the Contract price " to an amount nearly 20 percent higher than defendants initial low bid" was erroneous.  (Pl.'s Mot. at 5.)  Plaintiff argues that Trial Exhibit 553[2] is "not evidence of what price market conditions dictated," but is "evidence of how TXU, CNR and Infinity were going to divide the spoils of finessing the Contract price from $2.875 per unit to win the bid, to $3.45 per unit in the final Contract."  (*Id*. at 7.)  Plaintiff argues that TXU's explanation of the price change being due to market fluctuation is not credible and that the explanation is found in Mr. Napolitan's May 30, 2000 e-mail, which stated:

> "Starting this May 1st, the City of Detroit will be entering their new agreement with us.  In addition to their new price we also need to invoice them their MichCon charges. . . ."

(Trial Ex. 554.)

As an initial matter, the court did not reform the Contract price, but only determined that the delivery point should be reformed.  (9/21/05 Order, Conclusion of Law # 5.)  Second, the City is not now arguing that the correct price was anything other than $3.45 per MMBtu.  (Pl.'s Trial Br. at 4 ("[I]n unambiguous language TXU was to receive one payment per month from the City at a rate of $3.45 MMBtu of gas and TXU was to pay the cost of transport. . . .").)  Plaintiff only asks the court to analyze the issue of how the Contract price became $3.45.  In addition, several witnesses testified during trial and several trial documents reflected that the final Contract price was $3.45 MMBtu.  (*See* Trial Tr. Vol. I, p. 18 [Testimony of Jeff Weiser]; Trial Tr. Vol. II, p. 402 [Testimony of Scott Hamilton]; Trial Ex. 573.)  Plaintiff has not demonstrated how the

---

[2]Trial Ex. 553 is an e-mail from Mr. Pat Napolitan to Mr. Jeff Weisier, in which he states that the price is $3.45.

7

explanation of the price being $3.45 is relevant to the court's conclusion relating to the court's reformation of the contract, given the court's reliance on multiple pieces of evidence. Plaintiff has not shown that a new trial is warranted under Federal Rule of Civil Procedure 59(a) or (e).

### C. The Court's Award to Defendant Interest Pursuant to the Payment Ordinance ("Ordinance")

Plaintiff argues that the Ordinance "does not consider payment past due where there is an outstanding disagreement between the responsible person and the vendor" and "the City should not be assessed such interest beginning in 2003 when its breach did not occur until this court reformed the Contract in 2005, five years after it was executed." (*Id.* at 8.) Plaintiff argues that "[o]nly after the court reformed the Contract and the provision concerning transportation costs, were these amounts determined to be due to Seminole from the amounts withheld." (*Id.*)

The Payment Ordinance provides that:

Where payment owed to a vendor is past due under section 18-5-74 of this code, the city department or agency which originated the Contract where the delay is attributable to that department or agency, or such other city department or agency where the delay is attributable to that department or agency, shall pay to the vendor interest from its budget in the amount of one-half of one percent (0.5%) of the delinquent payment for each succeeding month . . . that the payment is past due.

Ordinance, Sec. 18-5-76. In addition, the ordinance requires Plaintiff to notify the vendor if any defect or error within ten business days after receipt of its invoice. Ordinance, Sec. 18-5-75. As Plaintiff stated in its motion, Sec. 18-5-77 does have "an express exception for payments that are the subject of legitimate dispute." (Pl.'s Mot. at 8.) Section 18-5-77 provides that:

8

> A payment to a vendor shall not be considered past due, as
> provided for in section 18-5-76 of this code, where there is an
> outstanding disagreement between the responsible person, or any
> other agent of the city, and the vendor, regarding the vendor's
> request for payment or the vendor's performance of the Contract or
> purchase order.

Ordinance, Sec. 18-5-77.  As the court concluded in its "Findings of Fact and
Conclusions of Law," Plaintiff never intended that the Contract would provide for
delivery of gas to the burner tip.  Therefore, there was no "outstanding disagreement"
between the parties.  As for Plaintiff's complaint that the court improperly assessed
interest beginning in 2003, the court notes that in its "Findings of Facts and Conclusions
of Law," the court determined that the breach occurred when Plaintiff began withholding
payments from Seminole in 2003 and the court retroactively reformed the contract to
2000.  The court did not err in finding Plaintiff liable for interest for payments that the
City did not make to Defendant under the Contract.

## III.  CONCLUSION

IT IS ORDERED that Plaintiff's "Motion for New Trial or to Alter Or Amend
Judgment Pursuant to Fed. R. Civ. P. 59(a) & (e)" [Dkt. # 103] is DENIED.

 S/Robert H. Cleland          
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of
record on this date, December 23, 2005, by electronic and/or ordinary mail.

9

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522