# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CITY OF DETROIT,

      Plaintiff,

v.                              Case No. 03-CV-74279-DT

TXU ENERGY RETAIL COMPANY, L.P. f/k/a
TXU ENERGY SERVICES and SEMINOLE
ENERGY SERVICES,

      Defendants.

_____/

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION,
GRANTING DEFENDANT SEMINOLE'S MOTION FOR LEAVE TO FILE A
RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION,
GRANTING DEFENDANT SEMINOLE'S "APPLICATION FOR COURT ORDER
REGARDING TURNOVER OF TRUST FUNDS,"
GRANTING IN PART DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES,
AND RESETTING THE SUPERSEDEAS BOND AMOUNT**

Pending before the court is Plaintiff City of Detroit's motion for reconsideration,

Defendant Seminole Energy Services, LLC's ("Seminole's") motion for leave to file a

response to Plaintiff's motion for reconsideration, Seminole's application for a court

order regarding turnover of trust funds, Seminole's motion for attorneys' fees and

Defendant TXU Energy Retail Company, L.P.'s ("TXU's") motion for attorneys' fees.

Having reviewed the briefs, the court concludes that a hearing is unnecessary.  *See*

E.D. Mich. LR 7.1(e).  For the reasons stated below, the court will grant Plaintiff's

motion for reconsideration, grant Seminole's motion for leave to file a response, grant

Seminole's motion to turn over the funds held in escrow, grant in part the Defendants'

motions for attorneys' fees and reset the amount of the supersedeas bond.

## I. BACKGROUND

Plaintiff filed this action in October 2003, claiming that TXU and Seminole breached a natural gas supply contract (the "Contract").  The dispute centered on whether the Contract required Plaintiff or Defendants to pay the cost of transportation of the natural gas from the "City Gate" to the individual City facility meters.  For the first three years of the Contract, Plaintiff paid the transportation costs.  Thereafter, Plaintiff contested its responsibility to do so under the express terms of Exhibit A of the Contract.  From April 2003, Plaintiff began reducing its monthly contractual payments to Seminole by that month's transportation costs.  Plaintiff placed these withheld funds in an escrow account pending the outcome of the litigation.  Plaintiff filed a motion for summary judgment on August 4, 2004.  The court denied the motion without prejudice pending conclusion of a bench trial on the merits of Defendants' counterclaim for reformation of the Contract.

On April 25, 2005, the court began a three-day bench trial on Defendants' counterclaim.  The court issued a September 14, 2005 order imposing a "constructive trust" in favor of Seminole on the escrowed funds, then in excess of $7,000,000.00, and any interest accumulated thereon.  On September 21, 2005, the court issued its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.  The court determined that Defendants were entitled to reformation of the Contract and Plaintiff was ordered to make immediate payment in the amount of $6,994,343.85, plus interest in the amount of $633,294.53 as of March 31, 2005 pursuant to the City's Prompt Payment Ordinance.  On September 29, 2005, judgment was entered in favor of

Defendants, and the court denied Plaintiff's motion for a new trial or to alter or amend judgment under Federal Rule of Civil Procedure 59.

Plaintiff also filed a "Motion to Stay Proceedings to Enforce Judgment without Bond pursuant to Fed. R. Civ. P. 62 (b) & (f)," seeking to keep the funds in escrow pending appeal.  On December 5, 2005, the court denied Plaintiff's motion, implicitly requiring Plaintiff to immediately pay Seminole $6,994,343.85, plus $633,294.53 interest, per the court's previous judgment.  Because Plaintiff did not do so, Seminole subsequently filed an "Application for Court Order Regarding Turnover of Trust Funds," which Plaintiff opposed.  Additionally, both Defendants filed motions for attorneys' fees. The court has not ruled on these motions.

On December 23, 2005, Plaintiff filed a "Motion to Set Amount of Supersedeas Bond to Stay Proceedings to Enforce Judgment pursuant to Fed. R. Civ. P. 62."  In its motion, Plaintiff proposed a bond in the amount of $8,500,000.  In its response, Seminole contended that the court should deny Plaintiff's request for a stay, order immediate payment of the escrow funds, and require Plaintiff to post a bond of $2,850,779.36 for interest on the escrow funds and Seminole's attorneys' fees and costs.  Alternatively, Seminole argued that in the event the court granted Plaintiff a stay on the escrowed funds, the court should require a total bond of $9,875,829.47, which includes the escrowed funds, attorneys' fees, costs and interest thereon.  Before the court ruled on this motion, Plaintiff filed its notice of appeal and filed a motion before the Sixth Circuit for a stay of the judgment pending appeal without posting a supersedeas bond.  On March 20, 2006 the Sixth Circuit issued a temporary stay to permit this court to rule on the pending motions.

3

Accordingly, on June 12, 2006, the court entered an order granting in part and denying in part Plaintiff's "Motion to Set Amount of Supersedeas Bond to Stay Proceedings to Enforce Judgment pursuant to Fed. R. Civ. P. 62." In that order, the court granted Plaintiff's motion for a stay under Federal Rule of Civil Procedure 62(d) and set the amount of the supersedeas bond at $9,875,829.47. The bond amount included (1) the principal judgment (the escrowed funds), which the court found belonged to Seminole based on its previous rulings; (2) interest on the escrowed funds to March 2008; and (3) Seminole's attorneys' fees, costs, and interest thereon.

Plaintiff filed a motion for reconsideration of the court's June 12, 2006 order, raising three assignments of error: (1) the court erred in including amounts for interest on the escrowed funds and attorneys' fees because the court had not previously awarded interest on the escrowed funds or granted Defendants' motions for attorneys' fees; (2) the court erred in finding that the court has previously ruled that the escrowed funds belong to Seminole; and (3) the court erred in not ruling on Seminole's pending application for turnover of funds. On July 12, 2006, Seminole filed a motion for leave to file a response to Plaintiff's motion for reconsideration, arguing that the court did not err in including interest and attorneys' fees in the bond or in determining that the escrowed funds belonged to Seminole, but agreeing with Plaintiff that the court should rule on Seminole's application for turnover of funds.

## II. STANDARD

Rule 7.1(g)(3) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled,"

4

and (2) show that "correcting the defect will result in a different disposition of the case."

E.D. Mich. LR 7.1(g)(3).  "A 'palpable defect' is 'a defect that is obvious, clear,

unmistakable, manifest, or plain.'"  *United States v. Lockett*, 328 F. Supp. 2d 682, 684

(E.D. Mich. 2004) (citing *United States v. Cican,* 156 F. Supp. 2d 661, 668 (E.D. Mich.

2001)).  A motion for reconsideration which presents the same issues already ruled

upon by the court, either expressly or by reasonable implication, will not be granted.

E.D. Mich. LR 7.1(g)(3); *Czajkowski v. Tindall & Assocs., P.C.,* 967 F.Supp. 951, 952

(E.D. Mich. 1997).  Under the local rules, "[a] motion for reconsideration must be filed

within 10 days after entry of the judgment or order."  E.D. Mich. LR 7.1(g)(1).

### III.  DISCUSSION

As an initial matter, Seminole has filed a motion for leave to file a response to

Plaintiff's motion for reconsideration.  While responses to a motion for reconsideration

are not permitted as of right, a court may permit a party to respond.  *See* E.D. Mich. LR

7.1(g)(2).  Because the motion for reconsideration raises a number of complex issues,

the court will grant the motion and accept the response as filed to aid the court in its

decision.

In its motion for reconsideration, Plaintiff asks the court to "reconsider, rehear or

clarify its order of June 12, 2006."  (Pl.'s Recons. Mot. at 2.)  The court agrees that its

June 12, 2006 order contained palpable defects that affected the disposition of the

case, and will grant Plaintiff's motion in part.  Specifically, the court should have ruled

on Defendants' motions for attorneys' fees and Seminole's motion for the turnover of

trust funds because the resolution of these motions will affect the amount of the

supersedeas bond.  Thus, the court will vacate its June 12, 2006 order, rule on the
pending motions and reset the amount of the supersedeas bond.

### A.  Ownership of Escrowed Funds

In Plaintiff's second assignment of error, Plaintiff argues that the court erred in
finding that the court had previously ruled that the escrowed funds belong to Seminole.
Plaintiff submits that the September 14, 2005 order imposed a constructive trust
"pending entry of a judgment in this litigation," and therefore does not establish
ownership of the escrowed funds after the court entered its judgment.  The court's
September 29, 2005 judgment, however, incorporated the court's September 21, 2005
"Findings of Fact and Conclusions of Law," which found that "Plaintiff breached the
Contract, as reformed, by improperly withholding payment in the amount of
$6,994,343.85," (9/21/05 Order at 16 ¶ 8), the entire amount of the escrow fund at that
time, (*id.* at 15 ¶ 63).  Plaintiff was also ordered to "make immediate payment of
$6,994,343.85, plus interest in the amount of $633,294.53, as of March 31, 2005, to
Seminole." (*Id.* at 16, ¶ 10.)

These orders establish that the escrowed funds belong to Seminole.
Accordingly, the court rejects as inconsistent with the evidence Plaintiff's argument that
the court "simply determined that as of September 27, 2005 the Contract should be
reformed consistent with the court opinion and that as a result Seminole was entitled to
$6,994,343.85."  (Pl.'s Recons. Mot. Br. at 9.)

### B.  Seminole's Application for Order Regarding Turnover of Trust Funds

Plaintiff's motion for reconsideration correctly points out that the court has yet to
rule on Seminole's pending "Application for Order Regarding Turnover of Trust Funds."

6

Because resolution of Seminole's application is important in resolving any ambiguity in the court's previous orders, the court will now rule on Seminole's application.  As stated above, the court has previously ruled that the funds currently held in escrow belong to Seminole.  The court has also previously ruled in its December 05, 2005 "Order Denying Plaintiff City of Detroit's 'Motion to Stay Proceedings to Enforce Judgment Without Bond Pursuant to Fed. R. Civ. P. 62(B) and (F)'" that Plaintiff is not entitled to a stay under any subsection of Federal Rule of Civil Procedure 62.

Plaintiff is not entitled to a stay as of right pursuant to Rule 62(d) because the September 29, 2005 judgment is not a money judgment as contemplated by Rule 62(d). The court's September 21, 2005 findings of fact and conclusions of law, combined with the September 29, 2005 judgment, reformed the Contract, a form of equitable relief. *See Farm Bureau Mut. Ins. Co. v. Buckallew*, 685 N.W.2d 675, 680 (Mich. Ct. App. 2004) (referring to "the equitable remedies of rescission or reformation of a contract") (citations omitted).  As a result of the reformation, the court determined that the funds held in escrow belonged to Seminole, and ordered Plaintiff to immediately pay Seminole its own money.  (09/21/05 Order.)  The mere fact that the court's judgment of equitable relief resulted in a transfer of funds does not change the nature of the judgment itself. Because the judgment was not a money judgment as contemplated under Rule 62(d), Plaintiff is not entitled to a stay as of right.[1]  Additionally, as stated more fully in the court's December 5, 2005 order, Plaintiff is not entitled to a stay under Rule 62(b), (c) or

---

[1] Indeed, Plaintiff never presents the court with any argument as to why the court's judgment is a money judgment, and instead erroneously assumes that Rule 26(d) applies.

7

(f).  Because the judgment does not operate as an automatic lien on Plaintiff's property

under Michigan law, Plaintiff is not entitled to a stay under Rule 62(f).  Rule 62(b) is

inapplicable because there are no pending motions to alter or amend the judgment or

for a new trial.  Furthermore, the court declines to issue a discretionary stay under Rule

62(c) because Plaintiff has not shown that it is likely to succeed on the merits on appeal.

 The court will accordingly grant Seminole's request for an order effectuating the

court's previous holdings by directing Plaintiff to turn over to Seminole all money

currently held in escrow.  To the extent that the court's June 12, 2006 "Order Granting in

Part and Denying in Part Plaintiff City of Detroit's Motion to Set Amount of Supersedeas

Bond" found to the contrary, the court is convinced any such finding was based on

palpable defects which affected the disposition of the case, and the court will vacate

that order.

## C.  Interest on Escrowed Funds

 Plaintiff contends in its first assignment of error that the court erred in including

interest on the escrowed funds in its order setting the amount of Plaintiff's supersedeas

bond.  In its motion, Plaintiff asserts that the court's order "specifically included a finding

of $6,994,343.85 plus interest of $633,294[.]53 under the city prompt payment

ordinance. . . . The [j]udgment of September 29, 2005 did not add any other figures."

(Pl.'s Recons. Mot. at 7.)  The court disagrees.  The court's Reformation Order stated:

> The City must be ordered to make immediate payment of $6,994,343.85,
> plus interest in the amount of $633,294.53, as of March 31, 2005, to
> Seminole, and *whatever additional withheld payments and interest beyond
> March 31, 2005, are calculated* consistent with these findings and
> conclusions.

(9/21/05 Order at 16, ¶ 10.) (emphasis added).

8

The court's September 21, 2005 order plainly states that Plaintiff can be held to pay monies and interest that accrue beyond March 31, 2005. The court, therefore, will deny Plaintiff's motion for reconsideration of its inclusion of the interest on the escrowed funds. In addition to the $633,294.53 interest owed as of March 31, 2005, Seminole is entitled to interest on the escrowed funds through September 29, 2005, the date of judgment, at the City of Detroit Payment Ordinance rate, and interest at the federal statutory rate thereafter. Accordingly, Plaintiff has failed to demonstrate that the court's inclusion of interest of $2,053,193.55 in its June 12, 2006 order setting the amount of Plaintiff's supersedeas bond was based on a palpable defect, and the court will accordingly deny Plaintiff's motion for reconsideration as to the escrow interest amount.

### D. Attorneys' Fees

In its March 24, 2006 order, the Sixth Circuit granted Plaintiff a temporary stay to permit this court to rule on a number of pending motions, including Seminole's motion for attorneys' fees. Plaintiff submits that the court erred by including in the supersedeas bond an award of attorneys' fees because the court had yet to rule on Defendants' attorneys' fees motions. The court agrees, and will now rule on both Seminole's and TXU's motions for attorneys' fees[2] and reset the supersedeas bond amount accordingly.

---

[2] Although the Sixth Circuit did not expressly request that this court rule on TXU's motion for attorneys' fees, this court has jurisdiction to do so because "federal courts repeatedly have held that the filing of a notice of appeal in the underlying action does not affect the district court's jurisdiction to consider a post-judgment motion for attorneys fees." *Jankovich v. Bowen*, 868 F.2d 867, 871 (6th Cir. 1989) (citation omitted).

### 1.  Attorneys' Fees Under the Court's Inherent Authority

Both Seminole and TXU[3] request that the court award attorneys' fees under the

court's inherent authority.  "Although the 'American Rule' has been and remains that

parties to litigation must bear their own attorney's fees, federal courts recognize several

exceptions to this general rule."  *Jones v. The Continental Corp.*, 789 F.2d 1225, 1228-

29 (6th Cir. 1986).  One exception is the court's ability to impose sanctions under its

inherent authority for bad faith, or conduct that is tantamount to bad faith.  *See*

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S.

752, 767 (1980); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501,

519 (6th Cir. 2002).  "The district court's inherent authority to impose a monetary

sanction applies equally to parties and their attorneys."  *Ray A. Scharer & Co. v. Plabell*

*Rubber Prods.*, Inc., 858 F.2d 317, 321 (6th Cir. 1988).  "A court must, of course,

exercise caution in invoking its inherent power, and it must comply with the mandates of

due process, both in determining that the requisite bad faith exists and in assessing

fees."  *Chambers*, 501 U.S. at 50 (citing *Roadway Express*, 447 U.S. at 767).

### a.  Plaintiff's Bad Faith Conduct in Initiating and Pursuing Claim

Both Seminole and TXU request that the court award attorneys' fees under the

court's inherent authority because Plaintiff initiated and pursued this action in bad faith.

They claim that Plaintiff acted in bad faith in filing and pursuing "a meritless lawsuit

based upon an interpretation of the Contract that it knew was not intended by either

party, and maintained that position in the face of its own knowledge that Exhibit A was

---

[3] TXU joins Seminole in its motion for attorneys' fees under the court's inherent
authority.  (*See* TXU's Att'ys Fees Mot. at 8.)

10

not a true reflection of the parties' actual agreement."  (Seminole's Att'ys Fees Mot. at 17.)

"In order to award attorneys' fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'"  *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)).  The court finds that although the Contract's Exhibit A reflected a mutual mistake between the parties, and the court reformed the Contract to comport with the parties' intent, Plaintiff's reliance on its interpretation of the agreement was not without merit.  While ultimately unpersuasive, Plaintiff's interpretation of the contractual agreement and prior negotiations was not altogether baseless.  Furthermore, there is no indication that Plaintiff brought this lawsuit to harass Defendants, or for any other improper purpose.   Accordingly, Plaintiff did not act in bad faith in either initiating or pursuing its claim, and the court will decline to use its inherent authority to award Defendants attorneys' fees on that basis.

### b.  Plaintiff's Bad Faith Conduct During Discovery

Both Seminole and TXU also move for attorneys' fees under the court's inherent authority due to Plaintiff's bad faith conduct throughout the course of discovery.  "The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith.  '"[Bad] faith" may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'"  *Roadway Express*, 447 U.S. at 767 (alteration in original) (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973)).  A court may assess

11

attorneys' fees if a party shows bad faith by engaging in dilatory discovery practices or for failing to obey a court order to "serv[e] the dual purpose of 'vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). *See, e.g. First Bank of Marietta*, 307 F.3d 501, 525 (affirming a district court's award of attorneys' fees under its inherent authority for noncompliance with discovery orders, delays in providing discovery and withholding material evidence); *In re Tenn-Fla Partners*, 226 F.3d 746, 748-51 (6th Cir. 2000) (awarding attorneys' fees for providing "misleading and incomplete disclosures").

In the instant case, Plaintiff's bad faith in the discovery process has been well-documented.  Plaintiff's dilatory conduct during discovery has necessitated five motions to compel between the two Defendants–all of which were granted.  Despite these orders, Plaintiff has provided incomplete, insufficient and unjustifiably delayed responses to multiple discovery requests.  Furthermore, Plaintiff has failed to properly maintain and safeguard evidence in its possession, leading to chain of custody problems, missing information, and most alarmingly, document destruction.

Defendants accordingly filed a joint motion for sanctions requesting sanctions for spoliation of evidence and monetary sanctions as provided in Magistrate Judge Capel's April 15, 2005 order.  (*See* Defs.' Joint Sanctions Mot.)  In response, Plaintiff did not deny Defendants' allegations, but instead argued that the evidence would not support Defendants' reformation theory, and because Defendants did not request a protective order, Plaintiff was not required to safeguard any relevant documents or other evidence.

12

(*See* Pl.'s Resp. to Joint Sanctions Mot.)  As the court stated to Defendants at the
hearing on their joint motion for sanctions, "I will say that you have identified
persuasively numerous problems in the discovery responses that at this point I believe
are not adequately answered by Detroit in its response provided this morning or
argued."  (04/20/05 Trans. at 45-46.)  Accordingly, the court granted Defendants'
request for sanctions for spoliation of evidence, and denied Defendants' request to
issue monetary sanctions under Magistrate Judge Capel's order.[4]

     Plaintiff's bad faith actions unquestionably put Defendants to great and
unwarranted expense both in the wasted time spent in communicating with Plaintiff and
in the expenses incurred in bringing their motions to compel and for sanctions.
Sanctions must be imposed to compensate Defendants for those expenses which were
the direct result of Plaintiff's misconduct.  Although case law supports fining Plaintiff for
all of Defendants' attorneys' fees, the court exercises its inherent powers with restraint.
*See Chambers*, 501 U.S. at 50.  Accordingly, the court will restrict its award to
Defendants' attorneys' fees associated with (1) communicating with Plaintiff regarding
Plaintiff's noncompliance; (2) Defendants' motions to compel; (3) any depositions that

_____

    [4] Plaintiff now claims that this decision forecloses the court from granting
Defendants' current motions for attorneys' fees relating to Plaintiff's bad faith exhibited
in discovery.  In so arguing, Plaintiff misconstrues the court's order.  The portion of the
court's April 25, 2005 order stating that "[t]he court will not impose monetary sanctions
on Plaintiff" referred only to Defendants' request that the court enforce Magistrate Judge
Capel's order for sanctions of $4,500 per day of non-compliance.  Defendants were not
then requesting attorneys' fees, and the court has not previously decided the issue.
And while the court's decision to grant Defendants' spoliation sanction helped to
eliminate any prejudice to Defendants' case, that order did not rectify the monetary
burden Defendants unnecessarily incurred due to Plaintiff's bad faith conduct.  The
court will therefore address the issue here.

were re-taken in light of information Plaintiff inappropriately withheld; and (4) Defendants' motions for sanctions.

Furthermore, the court will only grant a reasonable amount of attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983) (applying the lodestar approach in determining the reasonableness of an attorneys' fee award). The court will give the parties an opportunity to stipulate to a reasonable fee amount. If the parties are unable to do so, each Defendant is to submit an affidavit with supporting documentation as to their costs, as outlined above, which the court will review for reasonableness.

### 2. Attorneys' Fees Under Rule 37(c)(2)

Seminole also contends that it is entitled to attorneys' fees under Rule 37(c)(2), which states the following:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

Rule 37(c) requires the court to grant the award unless (1) the court found the request objectionable under Rule 36(a); (2) the admission was not substantially important; or (3) the party failing to admit reasonably believed that it might prevail on the matter or demonstrated good reason for its failure to do so.

Here, Plaintiff undisputedly failed to admit a number of items in Seminole's RFAs, which Seminole later proved at trial. Plaintiff does, however, argue that attorneys' fees are inappropriate here because it had reasonable ground to believe that it would prevail on its interpretation of the contractual agreement and prior negotiations. For the

14

reasons stated above, the court agrees.  Accordingly, the court finds that Plaintiff had reasonable ground for its failure to admit a number of Seminole's RFAs, and that sanctions are inappropriate under Rule 37(c)(2).

## IV.  CONCLUSION

IT IS ORDERED that Plaintiff's motion for reconsideration [Dkt. #148] is GRANTED IN PART and the court's June 12, 2006 order is amended as detailed in the body of this opinion.

IT IS FURTHER ORDERED that Defendant Seminole's motion for leave to file a response brief [Dkt. #149] is GRANTED.

IT IS FURTHER ORDERED that Defendant Seminole's application for turnover of trust funds [Dkt. #131] is GRANTED.  Plaintiff is ordered to turn over to Seminole the entire amount currently held in escrow on or before **noon** on **January 3, 2007**.

IT IS FURTHER ORDERED that Defendant Seminole's motion for attorneys' fees [Dkt. #108] is GRANTED IN PART.  If Plaintiff and Seminole are unable to submit a stipulated amount, Seminole shall submit an affidavit and detailed supporting documentation as outlined above on or before **noon** on **January 3, 2007**.

IT IS FURTHER ORDERED that Defendant TXU's motion for attorneys' fees [Dkt. #112] is GRANTED IN PART.  If Plaintiff and TXU are unable to submit a stipulated amount, TXU shall submit an affidavit and detailed supporting documentation as outlined above on or before **noon** on **January 3, 2007**.

IT IS FURTHER ORDERED that Plaintiff file a supersedeas bond to cover both the interest on the escrowed funds improperly withheld in the amount of $2,053,193.55,

15

and the amount of attorneys' fees the court will award in its subsequent order.  Plaintiff

shall file the supersedeas bond within **7 days** after the court enters its order awarding

attorneys' fees.


                                          S/Robert H. Cleland
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated:  December 19, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, December 19, 2006, by electronic and/or ordinary mail.

                                          S/Lisa Wagner
                                          Case Manager and Deputy Clerk
                                          (313) 234-5522